WILLIAM D. SCHULLER, ESQ.
Nevada Bar No. 11271
GIA N. MARINA, ESQ.
Nevada Bar No. 15276
**CLARK HILL PLC**
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Telephone: (702) 862-8300
Facsimile: (702) 778-9709
E-mail: wschuller@clarkhill.com
         gmarina@clarkhill.com

Attorneys for Plaintiff,
LAUREN HERMAN

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAUREN HERMAN, an individual, | CASE NO. |
| Plaintiff, | |
| vs. | **COMPLAINT WITH JURY DEMAND** |
| ELKO COUNTY, NEVADA, a governmental entity; AITOR NARVAIZA, an individual; DOUGLAS FISHER, an individual; AMY LEWIS, an individual; CRYSTAL COX, an individual; JUSTIN AMES, an individual; AMANDA OSBORNE, an individual; DOE INDIVIDUALS I-X; and ROE ENTITIES I-X, | |
| Defendants. | |

Plaintiff LAUREN HERMAN ("Ms. Herman"), by and through her undersigned attorneys at Clark Hill PLC, brings this action pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, and related claims for damages permitted by Nevada law, as follows:

///

///

ClarkHill\62683\372528\280779881.v4-2/4/25

**JURISDICTIONAL ALLEGATIONS**

1. Ms. Herman is an individual residing in Elko County, Nevada.

2. Defendant AITOR NARVAIZA is an adult citizen, a Nevada resident, and is employed by Defendant ELKO COUNTY, by and through ELKO COUNTY SHERIFF'S OFFICE, as Sheriff. Pursuant to Section 32 of the Nevada Constitution, Defendant NARVAIZA is an officer of Defendant ELKO COUNTY. Defendant is a final policymaker for Defendant ELKO COUNTY as he is responsible for formulating its law enforcement policies and procedures as well as implementing them. Defendant is also a final policymaker for ELKO COUNTY SHERIFF'S OFFICE as he is in charge of formulating and implementing internal policies and procedures, including officer discipline, as well as supervising the conduct of ELKO COUNTY SHERIFF'S OFFICE employees. He is sued in his individual capacity.

3. Defendant JUSTIN AMES is an adult citizen, a Nevada resident, and is employed by Defendant ELKO COUNTY, by and through ELKO COUNTY SHERIFF'S OFFICE, as Undersheriff. He is sued in his individual capacity.

4. Defendant DOUGLAS FISHER is an adult citizen, a Nevada resident, and is employed by Defendant ELKO COUNTY, by and through ELKO COUNTY SHERIFF'S OFFICE, as Lieutenant. He is sued in his individual capacity.

5. Defendant AMY LEWIS is an adult citizen, a Nevada resident, and at all times relevant to the allegations asserted herein, was employed by Defendant ELKO COUNTY, by and through ELKO COUNTY SHERIFF'S OFFICE, as former Human Resources Director. She is sued in her individual.

6. Defendant CRYSTAL COX is an adult citizen, a Nevada resident, and is employed by Defendant ELKO COUNTY, by and through ELKO COUNTY SHERIFF'S OFFICE, as Detective Sergeant. She is sued in her individual capacity.

7. Defendant AMANDA OSBORNE is an adult citizen, a Nevada resident, and is employed by Defendant ELKO COUNTY as Human Resources Manager. She is sued in her individual capacity.

8. Defendant ELKO COUNTY is a political subdivision of the State of Nevada, and is responsible for the health, safety, and welfare of all persons within its borders and oversees ELKO COUNTY SHERIFF'S OFFICE in its administration and provision of law enforcement services.

9. The true names and capacities, whether individual, corporate, associate, partnership, or otherwise of Defendants herein designated as DOE INDIVIDUALS I-X and ROE ENTITIES I-X are unknown to Ms. Herman, who therefore sues said Defendants by such fictitious names for the time being.

10. Ms. Herman will request leave of the Court to insert the true names and capacities of DOE and ROE Defendants when the same have been ascertained and will further request leave to join said Defendants to the instant action.

11. At all times relevant to this Complaint, all the actions of the County, Sherrif NARVAIZA, Undersheriff AMES, Lieutenant FISHER and Sergeant COX were performed under color of state law and pursuant to their authority as law enforcement officers.

12. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's causes of action arising under the United States Constitution and also pursuant to 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Plaintiff's causes of action arising under Nevada law pursuant to 28 U.S.C. § 1367.

13. Venue lies in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Plaintiff's claims occurred in and around Elko County, Nevada and Defendants are domiciled and/or employed in Elko County, Nevada.

14. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964 as amended. Specifically, Plaintiff commenced a charge of discrimination by timely filing intake paperwork with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff also commences this suit within 90 days of receipt of a right to sue notification from the EEOC.

15. On any issue herein triable of right by a jury, Plaintiff demands a jury pursuant to FRCP 38.

## GENERAL ALLEGATIONS

16. Ms. Herman was hired by the Elko County Sheriff's Office in August of 2017 as a Deputy.

17. Ms. Herman quickly gained seniority at her job as there were high turnover rates for detectives.

18. In October of 2021, Ms. Herman transferred into the Investigation Division as a detective.

*Discriminatory Conduct*

19. On December 29, 2022, Defendant FISHER lured Ms. Herman into his office under the pretense of a death investigation that Ms. Herman was assigned to as lead detective.

20. Defendant FISHER began to insert himself into the investigation, inquiring about personal property that belonged to the decedent, despite knowing that any property entered in evidence could only be released with the permission of the District Attorney's Office.

21. After Defendant FISHER inquired about an arrest operation she was working, Ms. Herman advised that she and the other detectives were forming an arrest operation regarding a sexual assault case.

22. Ms. Herman was discussing the importance of the case when Defendant FISHER commented to the effect of, "it's just a sex offense."

23. At the time of the offensive conduct, Ms. Herman was the only female detective employed at the Elko County Sheriff's Office.

24. Elko County Policy E4.2 Anti-Harassment states "Elko County promotes a productive work environment and does not tolerate verbal, physical, or graphical conduct/behavior(s) that harasses, disrupts or interferes with another's work performance or that creates an intimidating, offensive or hostile environment based on that person's race, color, religion, age, gender…or any other basis that is inappropriate or offensive."

25. Elko County Policy E4.2.2 states examples of prohibited conduct/behavior(s) include but are not limited to: "1. Offensive verbal communication including slurs, jokes, epithets, derogatory comments, degrading, or suggestive words or comments."

4

26. Defendant FISHER attempted to persuade detectives not to execute the operation to detain the suspect in the sexual assault case.

27. In an attempt to stymie the arrest operation, Defendant FISHER falsely told Defendant AMES that detectives were trying to work the holiday to get holiday pay.

28. Defendant FISHER did not make similar comments to male detectives in the unit. Indeed, the only reason Defendant FISHER engaged in this commentary was because Ms. Herman is a female.

29. Ms. Herman immediately reported the offensive conduct to her supervisor at the time, Nicholas Stake.

30. Mr. Stake spoke to Defendant AMES regarding Ms. Herman's report of sexual harassment. Mr. Stake told Defendant AMES that discrimination was illegal.

31. Defendant AMES advised Mr. Stake that Defendant FISHER would be apologizing to Ms. Herman.

32. Instead of receiving an apology, Defendant AMES accused Ms. Herman of lying and ignored the report.

*Retaliation Prior to Formal HR Complaint*

33. Despite having knowledge of Ms. Herman's complaints, Defendant AMES redirected blame to Ms. Herman and uplifted Defendant FISHER.

34. It became clear that Defendants AMES and FISHER sought to retaliate against Ms. Herman for her complaint.

35. On February 24, 2023, Ms. Herman was involved in an automobile accident while in her Elko County vehicle.

36. At the time of the accident, Defendants AMES and FISHER were out of the county.

37. Detective Grebenc contacted direct supervisor Detective Corporal Hankel, to advise that Ms. Herman was involved in an accident.

38. Ms. Herman contacted Elko Central Dispatch to send city officials to her location.

39. At the direction of Defendants AMES and FISHER, Ms. Herman was directed to submit to a urinalysis.

5

40. This was not common practice and was unequal treatment toward Ms. Herman.

41. While the Elko County Sheriff's Office has a policy regarding drug and alcohol testing when an employee is involved in an accident while in a county vehicle, this policy was indiscriminately applied at the behest of Defendants FISHER and AMES against Ms. Herman.

42. A minimum of five other deputies as well as a sergeant who had been involved in auto accidents were not required to submit to any drug or alcohol testing after the accidents.

*The Deficient Internal Investigation and Reprimand*

43. On April 14, 2023, due to the inaction by Mr. Stake, Ms. Herman filed a formal harassment complaint against Defendant FISHER with the Human Resources Department.

44. Upon handing her complaint to Human Resources Director Defendant LEWIS, Defendant LEWIS responded to the effect of, "thanks for ruining my day."

45. In a follow up interview to inquire into details surrounding her complaint, Defendant LEWIS and Mr. Rand were present, along with Detective Grebenc.

46. Mr. Rand's involvement in a Human Resources investigation is unprecedented.

47. Ms. Herman specifically advised that although the office was full of detectives at the time of the underlying incident, Defendant FISHER targeted her partially because she is the only female detective and further because Defendant FISHER viewed her as the "weakest link."

48. Defendant LEWIS attempted to redirect the meeting to a discussion regarding Ms. Herman's personal medical history.

49. Defendant LEWIS, purportedly employed as the Human Resources Director, redirected stating, "That's a perception, not a fact."

50. When Ms. Herman reported that Defendant FISHER's interference took time away from the investigation, she was confronted with biased accusations claiming the interaction was *only* ten to fifteen minutes and that she has an entire team working on the investigation. Specifically, after reiterating that the incident lasted approximately ten to fifteen minutes, Defendant LEWIS pointedly stated, "In *your mind*, this took away from the investigation."

51. Finally, Defendant LEWIS attempted to resolve Ms. Herman's complaints by blaming her for having a personal mentor-mentee relationship with Defendant FISHER, continually

6

asking how his comment that the case was "just a sex offense" was any different than discussions that took place in the course of their relationship.

52. On May 31, 2023, Ms. Herman received correspondence from Defendant Human Resources Director LEWIS. The correspondence informed Ms. Herman that an investigation was conducted into her complaint and the allegations raised could not be substantiated against Defendant FISHER.

53. Further, the correspondence from Defendant LEWIS blamed Ms. Herman for her "perceived impression" of the events.

54. On June 7, 2023, Ms. Herman inquired from Defendant LEWIS why the written decision only referred to harassment and bullying and did not address her complaints of slander and a hostile work environment.

55. On June 14, 2023, Defendant LEWIS responded to Ms. Herman stating, "As documented in the letter provided, 'Therefore, the investigation was unable to substantiate your allegations of harassment and bullying against Lt. Fisher on all occasions listed within your complaint.' The 'all occasions listed within your complaint' portion encompasses what you are inquiring about below."

56. On June 15, 2023, Ms. Herman responded to Defendant LEWIS stating that she was confused because the sentence referenced in LEWIS's email specifically resolved the harassment and bullying allegations, but nowhere in the decision did it address nor resolve slander or hostile work environment claims.

57. On the same day, Defendant LEWIS responded, "For clarification, a hostile work environment is part of our anti-discrimination policy. I apologize for the confusion. We did thoroughly investigate your complaint of hostility/slandering, and we were unable to substantiate your allegations." In fact, no investigation was performed.

58. Upon information and belief, Defendant LEWIS was involved in a personal affair with Defendant FISHER.

59. Because of the personal affair between Defendant LEWIS and Defendant FISHER, it was a conflict of interest for Defendant LEWIS to be involved in any investigation involving Defendant FISHER.

60. Upon information and belief, Mr. Rand was only involved in the subject investigation due to the personal affair between Defendant LEWIS and Defendant FISHER.

61. Mr. Rand's involvement in the investigation required approval by the County Manager, Defendant OSBORNE. Such approval was neither sought nor received.

62. Due to the personal affair, a thorough investigation was never completed into the complaint submitted by Ms. Herman.

63. Every person involved in the interaction between Ms. Herman and Defendant FISHER was not interviewed.

64. The following witnesses, who were not interviewed, would have provided information pertinent to the interaction: Detective Hankel, Detective Grebenc, and Detective Shoaf.

65. Defendant FISHER was not reprimanded or counseled for his behavior.

66. Defendant ELKO COUNTY knew, or should have known, about the harassment and failed to stop it.

*The Hostile Environment Increases*

67. After Ms. Herman submitted her complaint to Human Resources, conduct creating the hostile work environment escalated.

68. Pursuant to Elko County Sheriff's Policy 510.3.1 and E1, "Discriminatory harassment is verbal or physical conduct that demeans or shows hostility or aversion toward an individual based upon that individual's protected class. It has the effect of interfering with an individual's work performance or creating a hostile or abusive work environment."

69. Defendant FISHER and Defendant AMES were angry with Ms. Herman for submitting her complaint to Human Resources.

70. Indeed, Defendant AMES told Mr. Stake there was going to be "serious fallout" for the HR complaint not going to him first. This was after Mr. Stake had several discussions with Defendant AMES prior to Ms. Herman going to HR with her complaint.

71. Defendant FISHER and Defendant AMES created a plan to make Ms. Herman miserable at work to get the only female detective out of the unit or force her to resign.

72. It became clear that Defendant LEWIS was integral to this plan and coordinated with Defendants FISHER and AMES to retaliate against Ms. Herman.

73. On or about October 11, 2023, Ms. Herman was coerced into signing a document stating she would be reporting to Defendant FISHER as her immediate supervisor.

74. On December 10, 2023, Ms. Herman was out of the jurisdiction for training in Las Vegas, Nevada. While attending this training, Ms. Herman was not required to have her department-issued cell phone nor required to respond to any work-related emails or phone calls.

75. On December 18, 2023, at 07:30 hours, Ms. Herman returned to the Elko County Sheriff's Office. When she returned, she had many emails, voicemails, and members of the community to attend to.

76. One such email, sent on December 11, 2023, while she was out of the office at training, was a meeting invite for a detective meeting scheduled for December 18, 2023, at 13:30 hours. The email was not sent with a read receipt, nor flagged with high importance.

77. Further, Ms. Herman had a scheduled meeting with the Elko County Police Department regarding a high-profile case in which the Elko County Sherriff's Office Investigators were assisting.

78. Detective Corporal Marty Hankel, who was Ms. Herman's direct supervisor, was also in attendance at the meeting with the Elko County Police Department and approved Ms. Herman's participation in same.

79. On December 18, 2023, Ms. Herman and Detective Grebenc were at Mudd Hutt for lunch. When they arrived, they observed the vehicles of Defendant NARVAIZA, Defendant AMES, and Detective David.

80. It was learned that the purpose of the December 18, 2023, meeting was for Defendant NARVAIZA and Defendant AMES to tell Detective David that Ms. Herman and Detective Grenbac were speaking poorly about her.

9

81. The true purpose of the December 18 meeting was to discuss a way to oust Ms. Herman from her position.

82. On Monday December 19, 2023, Ms. Herman was served with a Letter of Reprimand ("LOR") from Defendant FISHER. The LOR was issued under the guise of attendance, performance, and insubordination.

83. The LOR's stated purpose was for failure to attend a detective meeting which occurred on or about December 18, 2023, the day prior to the LOR being issued.

84. Another purported basis of the LOR was Ms. Herman allegedly being "disrespectful" to a team member, Detective David. This was the same Detective that Defendants AMES and NARVAIZA met with the day prior.

85. Ms. Herman submitted written correspondence to rebut the LOR's allegations.

86. Ms. Herman's rebuttal to the LOR was ignored.

87. Defendant FISHER disciplined Ms. Herman without any investigation taking place.

88. The LOR is maintained in Ms. Herman's permanent personnel file.

*The Peak of the Hostile Work Environment*

89. On March 13, 2024, Ms. Herman returned to her position with the Department on light duty after taking medical leave for surgery. Upon her return, her direct supervisor Defendant COX refused to speak to Ms. Herman directly and would only communicate via email.

90. The Department failed to inform Ms. Herman of important policy changes, all in an effort to find a reason to discipline her or oust her from the Department.

91. Upon information and belief, the Department is making upcoming changes to its uniform policy, but those changes have not been codified in writing.

92. Specifically, Ms. Herman learned through other colleagues that the Department, through Defendant COX, announced its disapproval of jeans as appropriate attire. When one of the detectives inquired about the reason for the upcoming change, Defendant COX stated, "Because I'm your Sergeant."

93. Previously, especially while on light duty, the policy was that business professional attire, including jeans and a blouse, were appropriate. The Department is purposefully targeting her with the uniform policy in an attempt to garner a reason to oust her from the Department.

94. Since the filing of her EEOC charge, Ms. Herman has been subjected to continuing retaliation. The Department is willfully excluding Ms. Herman in an effort to substantiate any discipline it can pretextually create.

95. Defendant COX made it clear to Ms. Herman that she has spoken with Defendant FISHER and he has "told her everything" that is going on within the detectives' unit. While Detective Cox has not mentioned Herman's EEOC charge directly, her statements confirm its basis for the isolating treatment towards Ms. Herman.

96. Defendant FISHER advised a new detective, Detective Williams, about "issues" in the detectives' unit, referring to Ms. Herman, to which Williams advised FISHER that it was not his business, and he did not want Fisher to "color his glasses" as it was not a fair approach.

97. On April 10, 2024, detectives received an email from Defendant COX regarding bi-weekly stat sheets. Notably, while there are six detectives in the unit, the email was only sent to four of the detectives, including Ms. Herman.

98. Notably, removed from the email was Defendant COX's own husband who is a detective working with the NDI task force and the detective coroner. The email details a new policy to submit bi-weekly stat sheets with the employee's time sheet due to an allegation that detectives in the unit have falsified time sheets.

99. After returning from lunch, Detectives Herman, Williams, and Grebenc were discussing the email, when Defendant COX abruptly interrupted, advising them that they needed to read the email and click "accept" on the read notification. She threatened, "Don't make me make this policy."

100. In a follow-up meeting on the same day regarding the stat sheets, Ms. Herman requested to record the interaction due to ongoing issues with the administration. Defendant COX was notably angry and told Ms. Herman she was not being disciplined and thus, had no reason to record the interaction.

11

101. When Ms. Herman disagreed and expressed her desire to record the meeting, Defendant COX begrudgingly decided to record the meeting herself as well.

102. On October 31, 2024, Ms. Herman was assigned as the on-call detective and was notified by Elko Central Dispatch of a homicide in Osino, Nevada.

103. Ms. Herman contacted her supervisor, Defendant COX, who informed Ms. Herman that she had already been informed of the homicide by Defendant FISHER. Defendant COX requested Ms. Herman meet her and Detective Alex Cox, Defendant COX's husband, at the Elko County Sheriff's Office.

104. Pursuant to policy, whomever is assigned as the on-call detective becomes the lead detective on the case.

105. Ms. Herman appeared on scene and spoke with Sergeant Auvil, who had the suspect detained, and already in a *de facto* state of arrest.

106. Ms. Herman proceeded to speak to Defendant AMES, Defendant COX, and Detective A. Cox, and advised them of four persons who needed to be interviewed, who were standing on the opposite side of the road.

107. Ms. Herman then followed Sergeant Auvil to the Elko County Detention Center to process the suspect and conduct an interview of the suspect.

108. While en route to the Elko County Detention Center, Ms. Herman received a call from Defendant AMES stating he was sending Detective A. Cox to assist as he had just learned of new information about the case. Defendant AMES asked Ms. Herman to hold off on interviewing the suspect until Detective A. Cox arrived.

109. Ms. Herman advised Defendant AMES that she had just arrived at the jail and needed to process the suspect.

110. Detective A. Cox eventually arrived at the jail and met Ms. Herman, Sergeant Auvil and Deputy Bear.

111. Detective A. Cox provided Ms. Herman with a name and a vehicle and nothing more.

12

112. Ms. Herman commented that the information provided did not give her much information to confront the suspect and advised that Sergeant Auvil had already built a rapport with the suspect. Ms. Herman advised Detective A. Cox that if he wished to be in the interview, he would sit second chair and she would take primary lead.

113. Detective A. Cox, in front of everyone, proceeded to question Ms. Herman's ability to conduct a homicide interview, including asking her "how many confessions" she has gotten and "how many homicides" she has investigated.

114. After the interview, Ms. Herman was substantially left out of the investigation which she was supposed to lead.

115. Indeed, all her duties were stripped from her without explanation.

116. Detective A. Cox later applied for a search warrant without Ms. Herman's knowledge.

117. Detective A. Cox filled out the probable cause sheet to arrest the suspect for open murder without Ms. Herman's knowledge.

118. Ms. Herman filed a formal complaint with Human Resources regarding this incident.

119. Defendant OSBORNE has substantially failed to communicate any results of an investigation being undertaken regarding Ms. Herman's complaint.

120. Defendant OSBORNE has failed to respond to the complaint at all.

## FIRST CLAIM FOR RELIEF

### Hostile Work Environment – 42 U.S.C. § 2000(e)(2)

### (Defendants ELKO COUNTY and FISHER)

121. Plaintiff refers to and by such reference incorporates herein each, every, and all averments contained in the preceding paragraphs as though fully set forth herein.

122. Plaintiff is female.

123. Plaintiff suffered adverse employment action in the form of a hostile work environment because of her sex/gender.

13

124. Male coworkers created the hostile and abusive working environment and did not impose such adverse action upon males similarly situated to Plaintiff.

125. Defendants' purported rationales for the adverse actions were a pretext for discrimination based upon sex/gender.

126. The actions altered the conditions of Ms. Herman's employment.

127. Plaintiff is entitled to punitive damages, as Defendants re guilty of oppression, fraud and/or malice.

128. As a result, Defendants ELKO COUNTY and FISHER are liable under Title VII of the Civil Rights Act for all the aforementioned damages, as well as attorney's fees and costs of suit, pursuant to 42 U.S.C. §§ 2000(e)(2) and 1981(a).

## SECOND CLAIM FOR RELIEF

## 42 U.S.C. § 1983

## (Defendant ELKO COUNTY)

129. Plaintiff refers to and by such reference incorporates herein each, every, and all averments contained in the preceding paragraphs as though fully set forth herein.

130. 42 U.S.C §1983 authorizes private suits against any "person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

131. Sex-based discrimination in public employment is actionable under Section 1983 as a violation of the Equal Protection Clause of the Fourteenth Amendment, which protects "public employees from various forms of discrimination, including hostile work environment ... on the basis of gender."

132. Municipalities and other local governmental bodies are considered "persons" within the meaning of Section 1983.

133. Defendant ELKO COUNTY has a policy or custom to ignore discriminatory conduct by its employees.

134. Defendant ELKO COUNTY, acting under color of state law and or purporting to act under color of law, and within the course and scope of employment, deprived Ms. Herman of rights secured by the Constitution.

135. Defendant ELKO COUNTY, through its official actions, has violated the Constitution.

136. The conduct violated Plaintiff's right to be free from discrimination and retaliation for complaining of discrimination based on gender and sexual orientation as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, applicable to the County of Elko through the Fourteenth Amendment, while acting under color of State law, subjecting Defendant ELKO COUNTY to liability under 42 U.S.C. § 1983 for all of the aforementioned damages, attorney's fees, and costs.

## THIRD CLAIM FOR RELIEF

### Negligent Training

### (Defendant ELKO COUNTY)

137. Plaintiff refers to and by such reference incorporates herein each, every, and all averments contained in the preceding paragraphs as though fully set forth herein.

138. Nevada law imposes a duty on Defendant ELKO COUNTY to use reasonable care in the training and supervision of employees to ensure that they are fit for their positions.

139. Defendant ELKO COUNTY breached that duty when it became aware of its employees' harassing behavior but did nothing to correct it.

140. Ms. Herman suffered damages, including mental and physical distress, as a result of Defendant ELKO COUNTY's conduct.

141. Defendant ELKO COUNTY has failed to exercise reasonable care in the training of its personnel, who are incompetent in the foregoing respects, and who would not be incompetent in the foregoing respects but for this negligent training, subjecting ELKO COUNTY to liability for all damages proximately caused by its negligence, to include the aforementioned damages, as well as attorney's fees and costs.

**FOURTH CLAIM FOR RELIEF**

**Negligent Supervision**

**(Defendant ELKO COUNTY)**

142. Plaintiff refers to and by such reference incorporates herein each, every, and all averments contained in the preceding paragraphs as though fully set forth herein.

143. Defendant ELKO COUNTY had a duty to properly supervise its employees to prevent foreseeable harm.

144. Defendant ELKO COUNTY breached that duty when it failed to supervise its employees which resulted in harassment to Plaintiff.

145. Ms. Herman suffered damages, including mental and physical distress, as a result of Defendant ELKO COUNTY's conduct.

146. Defendant ELKO COUNTY failed to enforce policies and procedures regarding discrimination in the workplace, thereby failing to discourage further constitutional violations on the park of its employees.

147. Defendant ELKO COUNTY inadequately supervised its deputies and other officers thereby failing to adequately discourage further constitutional violations on the part of its employees.

148. Plaintiff is entitled to compensatory damages, and reasonable attorneys' fees and costs to the extent Nevada law allows.

**FIFTH CLAIM FOR RELIEF**

**Negligent Retention**

**(Defendant ELKO COUNTY)**

149. Plaintiff refers to and by such reference incorporates herein each, every, and all averments contained in the preceding paragraphs as though fully set forth herein.

150. Defendant ELKO COUNTY had a duty to remove an employee when it knows or has reason to know that the employee poses a risk of harm to others.

151. Defendant ELKO COUNTY breached that duty when it retained each individual Defendant named herein after creating a hostile work environment.

16

152. As a direct and proximate cause of Defendant ELKO COUNTY's breach, Ms. Herman has suffered stress, anxiety, inconvenience, mental anguish, loss of enjoyment, and damages to personal and professional reputation.

153. Plaintiff is entitled to compensatory damages, and reasonable attorneys' fees and costs to the extent Nevada law allows.

## SIXTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (ALL Defendants)

154. Plaintiff refers to and by such reference incorporates herein each, every, and all averments contained in the preceding paragraphs as though fully set forth herein.

155. Defendants' conduct was extreme or outrageous with either the intention of, or reckless disregard for, causing emotional distress to Ms. Herman.

156. Ms. Herman suffered severe or extreme emotional distress as the actual or proximate result of Defendants' conduct.

157. Ms. Herman has been treating with a medical provider related to the foregoing incident.

158. Ms. Herman is thus entitled to compensatory and consequential damages against Defendants in excess of $15,000.

159. As it has been necessary for Ms. Herman to retain the services of attorneys to prosecute this action, she is entitled to her reasonable attorney's fees and litigation costs.

## SEVENTH CLAIM FOR RELIEF

### Civil Conspiracy

### (Defendants AMES, FISHER, LEWIS, OSBORNE, COX and NARVAIZA)

160. Plaintiff refers to and by such reference incorporates herein each, every, and all averments contained in the preceding paragraphs as though fully set forth herein.

161. Defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming Ms. Herman.

162. Ms. Herman sustained damages resulting from Defendants' act(s) and/or failure to act.

163. Ms. Herman is thus entitled to compensatory and consequential damages against Defendants in excess of $15,000.

164. As it has been necessary for Ms. Herman to retain the services of attorneys to prosecute this action, she is entitled to her reasonable attorney's fees and litigation costs.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Herman prays for relief as follows:

1. For compensatory and consequential damages against Defendants;

2. For exemplary and punitive damages against Defendants;

3. For an award of reasonable attorney's fees and costs incurred herein;

4. For pre-judgment and post-judgment interest on the foregoing amounts; and

5. For such other and further relief as this Court may deem just and proper.

DATED this 4th day of February 2025.

**CLARK HILL PLC**

By  /s/ Gia N. Marina, Esq.
WILLIAM D. SCHULLER, ESQ.
Nevada Bar No. 11271
GIA N. MARINA, ESQ.
Nevada Bar No. 15276
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Attorneys for Plaintiff,
LAUREN HERMAN

ClarkHill\62683\372528\280779881.v4-2/4/25